1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

In re

MARK FOXTON MARING, individually and as
successor in interest to F/V Tiger, Inc.;
FRANCES M. INC.; MARK F. MARING
ENTERPRISES II, INC.; POLMAR
FISHERIES, INC.; POLMAR
INTERNATIONAL, INC.; POLMAR
INTERNATIONAL I, LLC; all Washington
companies

                    Debtor.

_____

MARK FOXTON MARING,

                    Appellant,

          v.

PG ALASKA CRAB INVESTMENT CO., LLC
and PADILI, LLC,

                    Appellees.

CASE NO. C07-1657-JCC

BANKRUPTCY APPEAL

ORDER

23

24

25

26

          This matter comes before the Court on Appellant's Brief on Appeal from Judgment in the United

States Bankruptcy Court for the Western District of Washington (Dkt. No. 9), Appellees' Brief (Dkt. No.

11) and Appellant's Reply. (Dkt. No. 13.) Appellees have also filed a Motion to Dismiss Appeal or

ORDER – 1

1

2   Alternatively, To Strike Portions of Appellant's Opening Brief for Failure to Comply with FRBP

3   8010(A)(1)(D) and 8010(A)(1)(E). (Dkt. No. 10.) The parties have fully briefed this matter as well. (*See*

4   Dkt. Nos. 15 & 17.) Having considered the briefs and other papers submitted by the parties, and

5   determining that oral argument is unnecessary, the Court hereby AFFIRMS the decision of the

6   bankruptcy court as follows.

7   **I.    BACKGROUND**

8          The parties to this action have several ongoing disputes pending in multiple fora, arising from a

9   business relationship gone sour. The sole issues on appeal here concern Appellant Mark Maring's

10   ("Maring's") petition for Chapter 7 bankruptcy and his eligibility for discharge.[1] Maring filed for

11   bankruptcy on August 11, 2006. (Pretrial Order 2 (Dkt. No. 11-10).)[2] On November 13, 2006, Appellees

12   ("PG Alaska") filed a complaint for nondischargeability in the bankruptcy action, challenging Maring's

13   discharge under 11 U.S.C. §§ 727(a)(2) and (4). (Appellant's Br. 9 (Dkt. No. 9).)

14          With a July 2007 trial date looming, PG Alaska deposed Maring on May 16, 2007. (*Id*. at 13.)

15   Two events surrounding this deposition became the basis for the Bankruptcy Court's ruling that Maring

16   was not eligible for discharge. First, prior to the deposition, Maring produced documents revealing that

17   he had transferred $50,000 to a former girlfriend during the window of time in which he was required to

18   disclose certain transfers of property in his Statement of Financial Affairs ("SOFA"). This transaction was

19   not listed on his SOFA. (Oral Ruling 4:18–24 (Dkt. No. 11-8).) The second event was Maring's

20   conflicting testimony at the deposition itself. The testimony concerned 21 promissory notes used to

21   substantiate a proof of claim that Maring's mother had filed against his estate in bankruptcy. Maring and

22

23         [1] The order that is the subject of this appeal only concerned Maring individually, and therefore he is the only debtor whose discharge is at issue. (*See* Appellant's Br. 4 n.4 (Dkt. No. 9).)

24

25         [2] In his oral ruling, the Bankruptcy Judge Samuel J. Steiner adopted the agreed facts portion of the pretrial order as part of the court's findings of fact. (Oral Ruling 3 (Dkt. No. 11-8).)

26   ORDER – 2

1

2   his mother had alleged that she loaned him over $300,000 and that this amount remained outstanding.

3   (Pretrial Order 5 (Dkt. No. 11-10).) When asked about the timing and circumstances in which the

4   promissory notes were executed, Maring gave three different answers, all of which were false. At trial,

5   Maring conceded that his deposition testimony was inaccurate. (Oral Ruling 7:16–22 (Dkt. No. 11-8).)

6       Based on these developments, PG Alaska moved to amend its complaint on June 7, 2007.

7   (Appellant's Br. 12 (Dkt. No. 9).) Maring, acting through counsel, consented to the filing of the Second

8   Complaint, while emphasizing that by doing so he was not "waiving any defenses." (*Id*.) PG Alaska filed

9   its Amended Complaint on June 22, 2007, raising for the first time the SOFA non-disclosure and

10  inconsistent deposition testimony as grounds for denying Maring's discharge under 11 U.S.C. § 727. (*Id*.)

11  The Bankruptcy Court pared down the number of issues in dispute with a summary judgment order on

12  July 18, 2007. It also conducted a two-day bench trial on July 17th and 18th to resolve PG Alaska's

13  remaining claims. (*Id*. at 16–17.) On August 6, 2007, the court issued an oral ruling in the case, denying

14  discharge based on the two issues set forth for the first time in the Amended Complaint. (*See* Oral Ruling

15  10:7–8 (Dkt. No. 11-8).) Maring filed this appeal alleging several errors in the Bankruptcy Court's

16  disposition, each of which the Court discusses in detail below.

17  **II.    DISCUSSION**

18      **A.    Standard of Review**

19      "On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment,

20  order, or decree or remand with instructions for further proceedings." FED. R. BANKR. P. 8013. A

21  bankruptcy judge's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set

22  aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court

23  to judge the credibility of the witnesses." *Id*; *see also In re Dill*, 731 F.2d 629, 631 (9th Cir. 1984).

24  However, a bankruptcy court's conclusions of law are reviewed *de novo*. *In re Dill*, 731 F.2d at 631.

25

26  ORDER – 3

1

2      **B.      Appellees' Motion to Dismiss or Strike**

3          PG Alaska has filed a motion to dismiss this appeal, or in the alternative, to strike portions of

4   Appellant's brief. (Dkt. No. 10.) Citing FRBP 8010(a)(1)(E), which states that argument on appeal shall

5   contain "citations to the authorities, statutes and parts of the record relied on," PG Alaska asserts that

6   Maring's appellate brief makes numerous statements of fact that do not appear in the record or are

7   patently false. (Appellee's Mot. 3–5 (Dkt. No. 10).) PG Alaska also takes issue with several sources cited

8   by Maring. (*Id*. at 5–9.) While it appears that Maring's brief is not entirely compliant with FRBP

9   8010(a)(1)(E), the Court declines to dismiss the appeal on this basis, and considers it unproductive and

10  unnecessary to strike the offending portions of the brief. With PG Alaska's specific objections duly noted,

11  the Court relies on the relevant authorities and record to evaluate the merits of the appeal.

12      **C.      Required Findings by the Bankruptcy Court Concerning Intent**

13          Under 11 U.S.C. § 727(a)(4)(A), discharge can be denied to a debtor who "knowingly and

14  fraudulently" makes a "false oath." A successful claim under this provision requires the plaintiff to show:

15  "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3)

16  the oath was made knowingly; and (4) the oath was made fraudulently." *In re Roberts*, 331 B.R. 876, 882

17  (9th Cir. BAP 2005). Mere carelessness or recklessness will not suffice under the third element of this

18  standard, though "recklessness can be probative of fraudulent intent." *In re Khalil*, 379 B.R. 163, 173

19  (9th Cir. BAP 2007); *Roberts*, 331 B.R. at 883–84. Fraudulent intent may also be inferred from

20  cumulative falsehoods. *In re Hammeken*, 316 B.R. 723, 730 (Bankr. D. Ariz. 2004). Maring challenges

21  the bankruptcy court decision by asserting that it failed to make the requisite findings, and even if it did,

22  the conclusion reached was clearly erroneous.

23          i.      "Failure to find"

24          Maring's threshold claim is that Judge Steiner's decision is "fatally infirm on its face" because it

25  does not contain explicit findings that Maring acted "knowingly" and "fraudulently." (Appellant's Br.

26  ORDER – 4

20–21, 22–23 (Dkt. No. 9).) Citing *Roberts*, Maring asserts that this requires reversal of the bankruptcy court's decision. (Appellant's Br. 22–23 (Dkt. No. 9).)

The relevant case law does not support the notion that a bankruptcy court's omission of certain magic words from the § 727(a)(4)(A) analysis, by itself, constitutes a failure to make requisite findings. Maring relies heavily on *Roberts*, which found that "[t]he bankruptcy court did not make a finding that Roberts acted deliberately and consciously in failing to make [requisite disclosures]." However, this was only because "[i]nstead, the court found that Roberts exhibited, 'a careless and reckless approach to the important duty of disclosure in sworn bankruptcy filings.'" *Roberts*, 331 B.R. at 884. Thus, that ruling was deficient not for a lack of explicit findings, but rather for explicit findings that were plainly inadequate. In other words, the Bankruptcy Appellate Panel took issue with what *was* said, rather than what was not. *Khalil* offers further support for this interpretation. There, the Panel prefaced its review as follows:

> Although the bankruptcy court did not explicitly say that Debtor acted with a knowing and fraudulent intent, its oral ruling leaves us with no doubt that it properly applied the correct legal standards described above.

379 B.R. at 175. This analysis confirms that review of an oral bankruptcy court ruling is not an exercise in formalism requiring courts to turn a blind eye to context. While it would have been preferable for Judge Steiner to clearly recite the standard in stating his findings and conclusions, this omission, by itself, does not render his ruling invalid.

### ii. "Knowingly" and "Fraudulently"

Maring also contends that the record does not support a finding that he acted "knowingly" and "fraudulently," citing various explanations for both his SOFA non-disclosure and inaccurate deposition testimony. (Appellant's Br. 21–22 (Dkt. No. 9).) With regard to the SOFA non-disclosure, he emphasizes that this was one of several payments for an outstanding debt, which he believed to be in the ordinary course of business. (*Id.* at 21.) To explain his deposition testimony, Maring argues that his mother had a

ORDER – 5

legitimate claim, something the bankruptcy court never denied, and that he "clarified" his testimony at

trial. (*Id*. at 21–22.)

Deciding whether Maring's actions were done "knowingly" and "fraudulently" required the court

to draw inferences from his actions and the circumstances in which they were couched. The question now

on appeal is not whether he can articulate a benign account of his actions, which the trial already afforded

him an opportunity to do, but whether Judge Steiner made the requisite finding as to Maring's mental

state, and whether it was "clearly erroneous." *See* FED. R. BANKR. P. 8013. The Court concludes that

Judge Steiner did find that Maring acted "knowingly" and "fraudulently," and that this determination was

not clearly erroneous.

With regard to whether the bankruptcy court made the requisite findings as to Maring's mental

state, it is important to view Judge Steiner's oral ruling in its entirety, as well as in context. Although he

never explicitly used the words "knowingly" or "fraudulently" in the findings portion of his oral ruling, his

summary of the Plaintiff's position makes it clear that these were the precise issues to which his ruling

was directed:

> There are three issues involved in this lawsuit. The first is the plaintiff's contention that the
> debtor **knowingly and fraudulently made a false oath** by not disclosing the $50,000
> transfer to Mary Porter on the [SOFA]. The Second is another claim of false oath in
> regard to the debtor's preparation of the 21 promissory notes which were used and
> attached to the claim filed by or on behalf of his mother . . .

(Oral Ruling 3:9–17 (Dkt. No. 11-8) (emphasis added).)[3] Any interpretation of Judge Steiner's findings

cannot be rendered in isolation from how he posed the question. Furthermore, the trial transcript makes

clear that the requisite elements of the analysis were clearly presented. For example, in his opening

statement, PG Alaska's attorney framed the case as follows:

> We will show that Mr. Maring **deliberately** failed to disclose a $50,000 transfer to his

---

[3] The third issue that he mentions was not used to support the denial of discharge. (*See* Oral
Ruling 10:1–6 (Dkt. No. 11-8).)

ORDER – 6

girlfriend, Mary Porter, within the year before bankruptcy . . . and that Mr. Maring has **intentionally** attempted to manipulate the bankruptcy process . . . The transactions in question exhibit all the badges of **fraud**, which we will show . . .

(Trial Tr. #1, 8:8–11, 8:19–20, 10:24–25 (Dkt. No. 11-3) (emphasis added).) Maring's attorney further

reinforced the relevant standard:

Mr. Maring did not testify - - he was wrong when he testified. **The question is was he intentionally wrong, which goes to discharge issues.** He has not admitted that he was intentionally wrong. But he has admitted that his testimony was wrong. He was incorrect. He said that multiple times already.

(*Id*. at 54:10–15 (emphasis added).) After all this, if there was any doubt that the trial was meant to

determine Maring's precise mental state, the following exchange between Maring's attorney and the

Court dispensed with it:

| | |
|---|---|
| Ms. Aebig: | He's arguing with the witness [Maring]. He's testified already that he was mistaken in his testimony. **He spent all day parsing the definitions and subtleties of that word.** |
| The Court: | All right. Objection's overruled. You can answer the question, Mr. Maring. |
| Maring: | So it was 'grouping' is the fabrication? |
| Mr. Bush: | Yes. |
| Maring: | Then my testimony was wrong. |
| Mr. Bush: | And you fabricated that testimony, didn't you? |
| Mr. Aebig: | Same objection. |
| The Court: | Same ruling. |

(*Id*. at 56:24–25, 57:1–10 (emphasis added).) In sum, one could conclude that Judge Steiner ignored or

was confused about the relevant legal standard only by cherry picking from the record.

Furthermore, this Court cannot say that the conclusion reached was clearly erroneous. While

Maring insists that his SOFA non-disclosure was proper, and that his deposition testimony was an

innocent mistake, pointing to circumstances that could support these claims (*see* Appellant's Br. 21–22

ORDER – 7

(Dkt. No. 9)), the court drew another conclusion based on several factors. Regarding the SOFA non-disclosure, Judge Steiner cited the fact that the transfer was made to a former significant other, making it "unlikely to be in the ordinary course of business." (Oral Ruling 5:12–14 (Dkt. No. 11-8).) The Judge also questioned Maring's sudden decision to repay a loan four years after it was allegedly made, especially since the loan was not actually made to Maring personally. (*Id.* at 5:15–23.)[4] The implication of this discussion, taken in conjunction with how the issues were framed at trial, is that the court believed the transfer was not made in the ordinary course of business, and that Maring, with knowledge, fraudulently omitted it from the SOFA.

With regard to Maring's false deposition testimony, Judge Steiner stated that the creation of the promissory notes "made absolutely no sense [to him]." While Maring attempts to characterize this as confusion, it is clear that the Judge was actually questioning the credibility of Maring's story: "As a practical matter, all [the promissory notes] do is cast suspicion on the amount and validity of the Bettie Maring claim. In short, the evidence is clear that the debtors's [*sic*] deposition testimony concerning the claim of the notes was repeatedly false. And I really fail to see why a witness has to be prepared in order to tell the truth." (*Id.* at 7:24–25, 8:1–7.) Judge Steiner's emphasis on the repeated falsehoods is consistent with the rationale from *Hammeken* that cumulative falsehoods may support a finding of fraudulent intent. 316 B.R. at 730. Furthermore, since Judge Steiner himself characterized the issue as whether "the debtor knowingly and fraudulently made a false oath," it appears that he found Maring's false testimony to be knowingly given.

From these findings, taken in context, two things are clear. First, the court made a credibility

---

[4] And while Judge Steiner did not mention this point in his ruling, it was brought to his attention during trial that the $50,000 transfer to Ms. Porter was a significant *overpayment* of the alleged loan. (*See* Trial Tr. #1, 80:14–19 (Dkt. No. 11-3).) While Maring characterized the surplus as a loan in itself, alternate interpretations are certainly possible.

ORDER – 8

assessment as to the relevant questions governing denial of discharge. Second, there was ample support for the conclusions reached, namely that Maring's non-disclosure and deposition testimony were both done "knowingly" and "fraudulently." Mindful that "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses," FED. R. BANKR. P. 8013, the Court cannot say that the trial court ruling was clearly erroneous.

### D. Materiality

Maring also argues that even if he knowingly and fraudulently made a false oath or omission, his discharge can only be denied if the subject of the falsehood was "material" to the bankruptcy estate, and that neither his transfer to Ms. Porter, nor the promissory notes for his mother's proof of claim satisfy this requirement. (Appellant's Br. 25–28 (Dkt. No. 9).)[5] While the word "material" does not appear in the statute, the relevant authorities support this requirement while setting a low bar: "In determining whether the false statement is material, the court looks to whether the statement bears a relationship to the debtor's estate, and concerns the discovery of assets, or the existence and disposition of his property." *In re Vanschoiack*, 356 B.R. 56, 64 (Bankr. D. Idaho 2006). Furthermore, "[t]he asset's value need not be 'material,' nor must a debtor 'succeed in harming creditors to warrant denial of discharge.'" *Id.* (quoting *In re Adeeb*, 787 F.2d 1339, 1343 (9th Cir. 1986)).

Maring argues that his actions were not material because they were "within normal parameters," with "neither of [the] occurrences involv[ing] the hiding of assets or money from creditors." (Appellant's Br. 26–27 (Dkt. No. 9).) He also relies heavily on his assertion that the Trustee has taken no adverse action or position against him. (*Id.* at 27.) None of these assertions refutes a finding of materiality. First, it is clear from *Adeeb* that actual harm to creditors is not a prerequisite for a false oath or omission to be

---

[5] Maring also raises the threshold argument that the court failed to make an explicit finding as to "materiality." (Appellant's Br. 25–26 (Dkt. No. 9).) This claim fails for the same reasons set forth in Subsection II.C.i above.

ORDER – 9

material. 787 F.2d at 1343. Second, with regard to the Trustee's position, both parties cite incentives from which opposing inferences may be drawn. Suffice it to say, the independent choices of the Trustee do not simply obviate the materiality analysis. Finally, and most importantly, Maring's claims that his actions concerned ordinary business transactions rather than the improper disposition of assets are not true simply because he says they are. The fundamental flaw in Maring's position is that it requires the Court to adopt his version of the facts in order to have merit. And yet, Judge Steiner rejected Maring's version, finding that the $50,000 transfer was not business as usual, but rather a fraud perpetrated with knowledge. He also questioned the validity of Maring's mother's proof of claim based on repeated inaccuracies in Maring's deposition testimony. The Court is not at liberty to simply ignore the trial court's findings of fact as they relate to these points.

With regard to the SOFA, it is clear that the non-disclosed funds "bear[] a relationship to [Maring's] estate, and concern[] the discovery of assets, or the existence and disposition of his property." *Vanschoiack*, 356 B.R. at 64. In order show that the $50,000 was immaterial, Maring would have to show that even if it was not repayment of a loan in the ordinary course of business, it was irrelevant to his bankruptcy case. This he does not and cannot say. The same is true of his false testimony regarding the promissory notes. Maring does not argue that the promissory notes were irrelevant to the disposition of his assets if we assume that his mother's claim was invalid and his false testimony was an attempt to conceal a fraud. PG Alaska's position at trial was that the $50,000 transfer was not the repayment of a loan in the ordinary course of business, and that all or part of Mrs. Maring's claim was not properly attributable to Maring's estate, which the promissory notes were meant to obscure. Regardless of what the court decided about these theories, they squarely implicate the bankruptcy action and are therefore material to a denial of discharge claim under 11 U.S.C. § 727(a)(4)(A).

### E.    Reliance on the Advice of Counsel

At trial, Maring argued that his SOFA non-disclosure was based on the legal advice of counsel. In

ORDER – 10

1

2  his oral ruling, Judge Steiner responded to this claim as follows:

3      Further, I conclude that the defense that popped up at the last minute, namely, I did this
       on the advice of counsel, was not applicable here. This debtor is a well-educated, long-
4      experienced and sophisticated businessman who could read question 10 on the statement
       of affairs just as well as anyone. This debtor cannot hide behind that defense. In addition
5      to that, I don't believe that such advice was given.

6  (Oral Ruling 5:23–25, 6:1–5 (Dkt. No. 11-8).) On appeal, Maring raises two grounds for error. First, he

7  argues that Judge Steiner refused to consider Maring's reliance on the advice of counsel, thereby

8  contravening Ninth Circuit law. (Appellant's Br. 28–29 (Dkt. No. 9).) Second, Maring asserts that it was

9  error for the court to conclude that no such advice was actually given. (*Id*. at 29–31.) Neither of these

10 contentions provide grounds for reversal.

11     A number of cases in this Circuit stand for the proposition that reliance upon the advice of

12 counsel may refute a finding of fraudulent intent. *See*, *e.g.*, *Bisno v. United States*, 299 F.2d 711, 719–20

13 (9th Cir. 1961). It is also clear, however, that "the debtor's reliance must be in good faith." *Adeeb*, 787

14 F.2d at 1343. Perhaps Judge Steiner's statement that the defense "was not applicable here," (Oral Ruling

15 5:25 (Dkt. No. 11-8)), leads Maring to conclude that the judge refused to consider the argument. On the

16 contrary, the record indicates that the bankruptcy court simply did not believe it. Specifically, Judge

17 Steiner evinced disbelief that any such reliance by this particular individual could have been made in good

18 faith. Indeed, were it true that this argument was dismissed as irrelevant, there would have been no need

19 for the Judge to assess Maring's level of sophistication and business savvy. The import of these

20 statements is that Maring knew what his obligations were without the assistance of counsel, and that the

21 attempt to "hide behind that defense" was not in good faith. Thus, the court's statement that the

22 argument was "not applicable" reflected a conclusion, based on a credibility assessment, that the defense

23 was unavailing under the circumstances.

24     This being the case, it is unnecessary to consider Maring's claim that the court *could not* conclude

25 that Maring had never been given such advice. While the court certainly can "choose to disbelieve" any

26 ORDER – 11

testimony when circumstance and common sense render it incredible, (*see* Appellant's Br. 30 (Dkt. No. 9)), the court's decision here was not predicated on this conclusion. Having found that a businessman of Maring's experience and sophistication would not have omitted the disclosure in good faith, the court's musings as to whether he actually received such advice, offensive as they may be to Maring and his attorney, were dicta.

### F. Timeliness of the Amended Complaint

Maring contends that the denial of his discharge was "procedurally infirm" because it was premised upon "new" allegations raised for the first time in the amended complaint, which do not "relate back" to the date of the original complaint. (*Id*. at 31–37.) Citing a concern for "fair notice" to the debtor, Maring asserts that the claims leading to the denial of discharge were "untimely," and therefore the bankruptcy court abused its discretion. (*Id*.)

This argument has absolutely no merit. Whatever an exposition on the finer points of bankruptcy procedure might yield, in this case it would only obscure the simple fact that Maring, through his counsel, stipulated to the filing of the amended complaint. Hoping to blunt the force of this obvious fact, Maring now argues that he "expressly reserved all defenses to this new pleading in a responsive pleading." (*Id*. at 34.) True as this may be, it does not entitle him to a reversal after raising those defenses for the first time on appeal, without any mention of the issue during motions practice or trial. This should come as no surprise to Maring considering that one of the primary cases on which he has relied drew the same conclusion on a similar issue. *See Roberts*, 331 B.R. at 881 ("We normally decline to consider on appeal an argument that is not raised in the bankruptcy court. Although we have discretion to consider issues not first raised at trial, we have no obligation to do so.") (citations omitted). The procedural argument that Maring now raises should have been brought to the attention of the trial court. Nothing about his reservation of defenses entitled him to pocket it away in the event of an unfavorable ruling.

Furthermore, the notion that the trial court committed reversible error for neglecting to consider

ORDER – 12

1

2 an argument that was never raised, cannot be maintained based on the substantive "harm" Maring

3 suffered here. Maring makes much of the fact that he "did not have fair warning that his discharge was on

4 the line when he was questioned at his May 16, 2007 deposition concerning Mary Porter, the

5 Replacement Notes, and his mother's proof of claim." (Appellant's Br. 35 (Dkt. No. 9).) In essence, his

6 claim is that the operative complaint at the time he gave the deposition made no mention of the factors

7 that led to the denial of discharge. There are at least two problems with this argument. First, it was the

8 deposition itself that gave rise to the denial of discharge, and therefore it was factually impossible for PG

9 Alaska to convey in advance that this would be asserted as a basis for denial. That the deposition

10 preceded trial by only two months cannot be held solely against PG Alaska, since that trial date was

11 apparently maintained out of Maring's desire to "put this mentally, emotionally, and financially draining

12 denial of discharge litigation with PG Alaska behind him." (*Id.* at 34.) More importantly, as Judge Steiner

13 stated, it is difficult "to see why a witness has to be prepared in order to tell the truth." (Oral Ruling

14 8:5–7 (Dkt. No. 11-8).) In the deposition, Maring gave several false statements about the circumstances

15 and timing under which the promissory notes were created. These misstatements involved the simple

16 question of whether the notes were created before or after he petitioned for bankruptcy, and several

17 appear to have been made after he took a break to confer with counsel. The idea that Maring suffered a

18 grave injustice from lack of fair warning, which was so severe as to require this Court to save him from

19 his own litigation strategy, is not compelling.

20 **G.   Standing**

21      Maring's final argument is that an ongoing suit brought by the Trustee against PG Alaska, if

22 decided against the latter, would leave PG Alaska without standing to bring this claim. (Appellant's Br.

23 37 (Dkt. No. 9).) Without offering comment on Maring's contingency theory, it is enough to say that

24 nothing has happened to date that authoritatively undermines PG Alaska's status as a creditor, and thus

25 the decision of the bankruptcy court cannot be overturned on this basis.

26 ORDER – 13

1

2   **III.     CONCLUSION**

3          For the foregoing reasons, the decision of the bankruptcy court to deny Maring's discharge under

4   11 U.S.C. § 727(a)(4)(A) is hereby AFFIRMED. The clerk is instructed to close this case.

5          SO ORDERED this 16th day of April, 2008.

6

7

8                                                                    _____

9                                                                    John C. Coughenour
                                                                     United States District Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   ORDER – 14